UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

RAYMOND JOSEPH ROBINSON,

        Plaintiff,                  Case No. 1:07-cv-668

v.                                         Honorable Paul L. Maloney

LORI GIDLEY et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On August 17, 2007, this Court ordered service of Plaintiff's complaint on Defendants Lori Gidley, Laura Krick, Dave Burnett and James Armstrong. On September 26, 2007, Defendants Gidley and Krick filed a motion for summary judgment (docket #15) on the ground that Plaintiff failed to exhaust his available administrative remedies. Defendants Burnett and Armstrong subsequently filed a motion for summary judgment on December 28, 2007 (docket #29), claiming that Plaintiff failed to exhaust his administrative remedies. Plaintiff filed responses to the motions on October 29, 2007 (docket #20) and December 23, 2007 (docket #32), respectively. Upon review, the Court will grant summary judgment in favor of Defendants Gidley, Krick and Armstrong based upon Plaintiff's failure to exhaust his available administrative remedies. Plaintiff's action will proceed against Defendant Burnett.

**Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative

defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Facts**

Plaintiff is presently incarcerated in the Boyer Road Correctional Facility (OTF). In his *pro se* complaint, he sues Michigan Department of Corrections (MDOC) Special Activities Coordinator Dave Burnett, MDOC Prisoner Affairs Manager James Armstrong and the following OTF employees: Deputy Warden Lori Gidley and Assistant Deputy Warden Laura Krick.

Plaintiff, who is Jewish, first was approved for the Kosher Meal Program in 1997. He admits that before 2002, he voluntarily removed himself from the Kosher Meal Program on two occasions due to insufficient food quality and quantity. He contends that he was involuntarily removed from the program on a third occasion when he was transferred to the Virginia Department of Corrections. Plaintiff alleges that since 2002, he repeatedly has been denied reinstatement to the Kosher Meal Program in violation of his First Amendment rights and his rights under the Religious

3

Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"). Under MDOC policy, after more than two removals from the Kosher Meal Program, a prisoner must receive the approval of the MDOC Deputy Director before being reinstated to the program. See MICH. DEP'T. OF CORR., Policy Directive 05.03.150, at ¶ WW (effective May 24, 2004). Defendant Burnett maintains that Plaintiff has been removed from the Kosher Meal Program on three occasions and failed to present any special circumstances warranting the Deputy Director to reinstate him to the program. (See 4/16/04 Memorandum from Dave Burnett, docket #16-4.) Plaintiff claims that he did not remove himself from the program more than two times, and, thus, should have been reinstated to the program. Plaintiff seeks injunctive relief, as well as monetary damages.

### Discussion

I. **Applicable Law**

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with

prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

## II. MDOC Grievance Policy

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.

---

[1] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

5

*Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

### III.    **Grievances**

Defendants contend that Plaintiff filed two grievances regarding the denial of his requests to participate in the Kosher Meal Program. Plaintiff filed the first grievance on April 30, 2004, while he was incarcerated at the Hiawatha Correctional Facility (HTF). (*See* Grievance No. HTF-04-04-257-20z, Defendant's Exhibit 2, docket #16-4.) In his Step I grievance, Plaintiff claimed that Dave Burnett was denying his right to kosher meals and to wear his yarmulke during visits. Plaintiff's grievance was denied at each step of the grievance process.

Plaintiff filed his second grievance on May 9, 2006, while he was incarcerated at OTF. (*See* Grievance No. OTF-06-05-283-20E, Defendant's Exhibit 3, docket #16-5.) Again, Plaintiff alleged that Defendant Burnett violated his right to practice his religion by denying his

request to participate in the Kosher Meal Program. Plaintiff's grievance was denied at each Step of the grievance process. In his Step III Response, Defendant Armstrong stated:

> The grievant alleges that his most recent request for participation in the kosher meal program was improperly denied. Grievant alleges that the Department's Special Activities Coordinator incorrectly stated that the grievant had voluntarily removed himself from the Kosher program three times. Grievant alleges that he had removed himself twice, but the third time he was removed [sic] was because he was transferred to the Virginia DOC, and he requested a return to the program immediately upon his return from Virginia. Grievant seeks as relief that he be immediately reinstated to the Kosher program, that false information be removed from his file and that he be given "$500,000.00 USD" in damages.
>
> This investigator has reviewed the record presented with the appeal to Step III. All relevant information was considered. The record presented with the appeal does not suggest that further action is justified at this level. The grievant acknowledges that he voluntarily removed himself from the Kosher program in 2000 and 2001. There is no evidence that the grievant requested immediate return to the Kosher program immediately [sic] upon his return from Virginia, and that failure to do so was considered a voluntary removal. In April 2004, the grievant requested a return to the program and was denied. In April 2006, the grievant wrote directly to the Special Activities Coordinator requesting return to the program, instead of following the proper process set forth in MICH. DEP'T. OF CORR., Policy Directive 05.03.150 "Religious Beliefs and Practices of Prisoners" and OP CFA 05.03.150 - A "Kosher Meal Program." The grievant's request was denied by the Special Activities Coordinator due to his sporadic interest in the program and his voluntary removals.

(Step III Grievance Response, No. OTF-06-05-283-20E, Defendant's Exhibit 3, docket #16-5.)

Defendants maintain that Plaintiff failed to exhaust his administrative remedies with regard to Defendants Gidley, Krick and Armstrong because he did not name them in either of his grievances. In his responses, Plaintiff claims that under *Jones*, he was not required to name the Defendants in his grievance. In *Jones*, 127 S. Ct. at 923, the Supreme Court stated that because "the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." However, the *Jones* Court dealt with MDOC Grievance Policy that became effective November 1, 2000. In that version of MDOC

7

Grievance Policy, there was no requirement that particular officials be named in a grievance. The version of the MDOC Grievance Policy in effect at the time relevant to this action requires the "[d]ates, times, places and names of all those involved in the issue being grieved are to be included" in the grievance. MICH. DEP'T. OF CORR., Policy Directive 03.02.130 at ¶ T. Therefore, in order to properly exhaust, Plaintiff was required to name all of the Defendants in the grievance. Because Plaintiff did not name Defendants Gidley, Krick and Armstrong in a grievance, he failed to exhaust his administrative remedies against them. *See Jones*, 127 S. Ct. at 922-23.

Defendants also contend that Plaintiff failed to state a claim against them. I decline to address these arguments as the Court's Order for Service (docket #4) explicitly provided that "if a Defendant contends that the Plaintiff has failed to exhaust his administrative remedies as to one or more claims contained in the complaint, the alleged failure must be raised in a motion for summary judgment . . . . **Any motion asserting the exhaustion defense must be limited to that issue only**. If the Court's ruling on the motion does not dispose of the entire case, any remaining Defendants will have sixty days from the date of the Court's order on the motion to file a responsive pleading raising any other defense." (Emphasis in original.) As the Court is granting summary judgment in favor of Defendants Gidley, Krick and Armstrong, only Defendant Burnett will be required to file a further responsive pleading.

## Conclusion

For the foregoing reasons, Defendant Gidley and Krick's motion for summary judgment (docket #15) will be granted because Plaintiff failed to exhaust his administrative remedies against them. In addition, Defendant Armstrong and Burnett's motion for summary judgment (docket #29) will be granted in part as to Defendant Armstrong because Plaintiff failed to exhaust

8

his administrative remedies against him. Consequently, Defendants Gidley, Krick and Armstrong will be dismissed from this action without prejudice and Plaintiff's action will proceed against Defendant Burnett.

An Order consistent with this Opinion will be entered.


Dated:  March 3, 2008                             /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge